### CITY OF DETROIT v. MICHIGAN PAVING COMPANY.

*Municipal contracts—Agency—Conversion.*

A paving company receiving pay for both work and materials furnished by itself, is not a municipal agent, but an independent contractor.

Recovery cannot be had on a claim against the city of Detroit unless it has been first presented to the common council for audit and allowance as required by the city charter (ch. 4, sec. 25).

A paving company that had forfeited its contract left a quantity of sand in the street which it had agreed to pave, and another contractor used the sand in finishing the job. The company sued the city in assumpsit, resting on the tortious conversion of the sand. *Held* that the company should have removed the sand, and as it neither did so nor made any demand for it, neither the city nor the later contractor committed any tort in removing it; that it was therefore not converted unless the city sold it; and if the city did not sell the sand, it was not answerable for the use made of it by the contractor, as he was not a municipal agent.

Error to the Superior Court of Detroit.     Submitted January 22.     Decided February 1.

Assumpsit.     Defendant brings error.

*D. C. Holbrook* for plaintiff in error.

*F. A. Baker* for defendant in error.

Campbell, C. J.     This case was before us formerly on points different from those here raised, and on facts which would not allow some of these to be presented. As now appearing, the substantial merits are these: Defendants in error, who were plaintiffs below, made a contract with the city of Detroit to pave a part of St. Antoine Street, and furnish all the material. This contract was forfeited for non-compliance with its conditions, leaving part of the street partially paved and ready for paving, and also leaving some loose sand lying within the limits of the unfinished work. The city let out the contract to other parties who used this sand, and, as the proof is said to have tended to show, were to use it, and took its value into consideration in making their bids. It is averred in the bill of exceptions that this sand was worth $696.12. It does not appear what, if any, specific allowance was made for this sand in the new contract, but it appears the new contract enabled the city to get the work done cheaper by about $1,600 than if the plaintiffs below had fulfilled their contract.

We find no testimony referred to as indicating how much of this arose from the unfinished work, aside from the sand, nor whether there was any difference in the price of the work in detail under the two contracts.

The claim of plaintiffs below was never presented to the council before suit.

Charges were, among others, asked and refused:

3. "That if the jury find that the plaintiff placed, left and abandoned the sand in the street, and the same was never sold by, nor demanded of the defendant, the plaintiff cannot recover in this action."

4. "That if the claim was never presented to the common council of the defendant for audit and allowance, as required by section 25 of chapter 4 of the charter of the city of Detroit, the plaintiff could not recover."

And the court charged that if the jury believed the testimony the plaintiff was entitled to recover the sum of $696.12 for said sand.

This last charge cannot be maintained on the evidence as reported to us. But the principal questions arise on the other charges.

It must be borne in mind, as stated in our former decision, that the city is very much hampered in making contracts, and that it could not have purchased this amount of sand, except upon proposals and bids. Charter, chap. 8, § 207. No action, therefore, either by the board of public works or by any other city official, could bind the city to take it or pay for it. If there is any liability in the corporation itself, it cannot be a contract liability in the proper sense of the term. The case before us does not show very distinctly, if at all, any tortious act performed by any city authorities within their jurisdiction, or by corporate authority, unless it is the attempt to use the sand as belonging to the city in making the new contract. The record does not show just how this was done, but for the purposes of this hearing we may assume, perhaps, that there was evidence to that effect that was legally admissible,—although we cannot, for ourselves, determine how this was.

Unless this was done in some way which would bind the city, the wrong was private and not corporate.

Upon what principle, then, could the city be held responsible? It could only be on one of two grounds: 1. As having authorized a tort, or 2, as having received value belonging to defendants in error.

By suing in assumpsit, the plaintiffs below affirmed the validity of the action of the city in disposing of this sand, if it was disposed of. They—under the charge which was refused—must be held, on the hypothesis there presented, to have left their sand where they had no right to leave it, and made no effort to remove it, and made no demand of it from the city. It would have been no tortious act whatever in the city or its contractors to remove this sand from the street, and it was the clear duty of defendants in error to take it out of the way. Nothing but a distinct sale, therefore, by the city, could under the facts of this case, amount to a conversion by the city. Use by the contractors on any other footing than as grantees of the city would be an independent act of their own, for which the city could not be responsible. They were not city agents, but independent contractors, receiving pay for both work and materials furnished by themselves. If the city did not sell them the sand, they got no title to it; and if the city did not sell it, there was no municipal act that injured defendants in error at all, or that interfered with their sand. The court erred in not so charging.

But the other alleged error above referred to requires some consideration.

By § 25, chapter 4 of the city charter of Detroit, all claims against the city are required to be presented to the council for audit or allowance, accompanied by affidavit in case of contract, and it is provided that "it shall be a sufficient bar and answer to any action or proceeding, in any court, for the collection of any demand or claim against said city, that it has never been presented

38 MICH.—46.

to the council for audit or allowance, or if on contract, that it was presented without said affidavit, and rejected for that reason, or that the action or proceeding was brought before the council had a reasonable time to investigate and pass on it."

A claim of the nature of that before us, being unliquidated and depending on peculiar grounds differing from any contract relations, is one which especially calls for inquiry and investigation. The statute designs, as far as possible, to avoid the bringing of lawsuits, and to require an attempt to settle as a condition precedent to suing. It does not require any plea to be put in asserting that the claim was never presented, and inasmuch as the plaintiff must always know whether or not this was done, he cannot need to be informed of it by notice. It is contrary to public policy to allow city officials to dispense with any of the safeguards provided against fraud or collusion, and it needs no great reflection to discover that if claims can be put in suit without an opportunity given to the council to look into the facts, it would not be impossible or improbable that defenses which might have been well known to some members of the council, or within their reach at the time the claim accrued, might not be known or made available by those conducting the defense.

This suit when first presented was based on a claim for compensation under a contract partly fulfilled. The compensation demanded was based on the measure provided by the contract itself, subject to any proper deductions. If such a cause of action had been held valid, the question would have remained whether it could not be audited by the city officers without applying to the council. Both parties desired the merits to be decided, and when it was held no right of action existed under the unfulfilled contract, the authority to audit such claims ceased to be important. It now stands on an entirely different ground, as a claim for property converted by the city where the assumpsit rests on a waiver of the

tort, which has nothing to do with the paving contract. This of itself shows the importance of having such matters presented for allowance. The council might or might not have made an allowance such as was first sued for,—although, as previously decided, it was not a valid claim. But it is not at all probable that the city would have refused to pay for the sand, if actually appropriated and disposed of by the city. At any rate, the expenses of this litigation should not have been forced upon the city without a refusal to do justice.

We think the judgment should be reversed with costs and a new trial granted.

MARSTON and GRAVES, JJ., concurred.

COOLEY, J.    I concur in reversing the judgment on the first point discussed in the foregoing opinion.