RHODA SOUTHWELL v. THE CITY OF DETROIT.

*Municipal corporations—Negligence—Repair of streets—Independent contractor.*

1. A city, while grading and paving a street under the power conferred by its charter, must close to public travel that portion thereby rendered unfit or unsafe, in order to suspend the *duty* imposed by statute to keep its streets which are open to public travel in good repair for that purpose.

2. The statutory duty imposed upon a city to keep its streets in good repair is one which the city itself is required to perform, and continues although the city is obliged under its charter to enter into an engagement with an independent contractor for grading and paving such streets, through whose fault an injury occurs.

Error to Wayne. (Brevoort, J.) Argued June 15, 1888, and re-argued February 19, 1889. Decided April 19, 1889.

Case for negligence. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Stewart & Galloway*, for appellant.

*John W. McGrath* and *Fred H. Warren*, for defendant.

[The points of counsel are fully stated in the opinion. —REPORTER.]

CHAMPLIN, J. In the summer of 1886 the city of Detroit, by its board of public works, entered into a contract with the Talbot Paving Company to grade and pave Fourth street, from the north curb-line of Fulton street to the south curb of Forrest avenue. The paving company were to furnish, at their own cost and expense, all of the materials and labor, and do and complete the job according to certain specifications particularly set forth in the contract, for which they were to receive $1.17 for each square yard contained in the work, and all work and materials necessary to complete the same. They were to commence the job on or before August 2, 1886, and complete the same on or before October 11, following. The contractors agreed—

" To erect and maintain a good and sufficient fence, railing, or barrier around· any and all excavations necessary for such work, in such a manner as to prevent accidents; to place upon such railing, fence, or barrier, at

twilight on each day, suitable and sufficient colored lights, and keep them burning during the night; and, further, to pay to, indemnify, and save the city harmless against all loss and damage which may be occasioned or arise by reason of any negligence or carelessness on their part in doing such work."

By another clause of this contract they agreed—

"To carry on the work at such points as the board of public works shall from time to time direct."

Also,—

"That they will not employ unfaithful or incompetent workmen or overseers, or disorderly persons, and that they will immediately discharge any person in their employ who is declared to be so, and whenever directed by said board; and, further, that they will personally perform the several stipulations of this contract, or by workmen under their immediate superintendence, and not by a subcontractor."

The board had the right under the contract to reject material which it considered not in accordance with the contract, and also to diminish the quantity of work at street crossings without vitiating the contract. It was mutually agreed that the common council should cause a special assessment to be levied upon the abutting lots to pay the contractor for all the work done and materials furnished, and the party of the first part agreed to pay over to the contractors the avails of the special assessment, and it was expressly agreed that the city of Detroit should not be liable for any part or portion of said special assessment until the same should be actually paid into the treasury of the city.

The charter of the city of Detroit empowers the common council to grade and pave the streets and avenues in the city. Local Acts of 1883, Act No. 326, chap. 7, § 33. It also provides that no contract for the grading and paving of a street at a cost exceeding $200 shall be entered into, except to and with the lowest responsible

bidder. Act No. 326, chap. 11, § 9. And section 8 of the same chapter provides that—

" No such work, supplies, and materials shall be paid for, or contracted to be paid for, except out of the proceeds of the tax or the assessment " levied to defray the expenses thereof.

The Talbot Paving Company entered upon the prosecution of the work under their contract, and in carrying it forward removed the earth to prepare the foundation for the paving. The excavation extended entirely across the street, and was about two feet deep. On the night of August 27 it was left without any barriers to prevent persons traveling along Fourth street from driving into the excavation, or lights to warn them of danger. About 9 o'clock in the evening of that day plaintiff was riding with her husband in a buggy, drawn by a horse, along Fourth street. It was dark, and as he was driving with due care they were precipitated into the excavation, the horse was thrown down, the buggy overturned, and plaintiff was thrown upon the ground, and severely injured. She brought this action against the city of Detroit to recover her damages.

The plaintiff bases her right of action upon the following proposition, namely:

" The city, being by statute required to keep the streets in repair, and being liable in damages to any one injured, is thereby charged with the duty of repairing the streets. It cannot tear up the streets through its agent or contractor without taking precautions to save the public from injury which would naturally follow from so tearing up the streets."

It was held in *Detroit v. Blackeby*, 21 Mich. 84, that the city of Detroit was not liable in its corporate capacity for the negligent acts of its officers which constituted non-feasance only. Since the decision in that case the Legislature has passed an act laying a duty upon muni-

cipalities to keep the streets under their control in repair. Section 4 of this act reads as follows:

"It is hereby made the duty of townships, villages, cities, or corporations to keep in good repair, so that they shall be safe and convenient for public travel at all times, all public highways, streets, bridges, cross-walks, and culverts that are within their jurisdiction, and under their care and control, and which are open to public travel." How. Stat. § 1445.

Another section provides—

"That any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets  *  *  *  in good repair, and in a condition reasonably safe and fit for travel, by the township, village, city, or corporation whose corporate authority extends over such public highway, street,  *  *  * and whose duty it is to keep the same in good repair, such township, village, city, or corporation shall be liable to, and shall pay to, the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction." Id. § 1442.

The statute creating the duty to keep streets in good repair, and fit for public travel, must be construed with reference to the authority conferred upon the city of Detroit to grade and pave its streets. It must not be so construed as to nullify the power given by the charter. The duty to keep the streets in repair, and the exercise of the power to dig up the streets and grade, or to put in sewers or water-mains, cannot both exist at the same time with respect to streets so torn up. How can a street be kept in repair and fit for public travel while it is being graded and paved its full width? It cannot be. It is absurd to say that the statute, while giving the city full authority to grade and pave the streets, at the same time imposed a liability upon it for the street being out of repair while the power was being lawfully exercised.

When the street is thus rendered unfit for public travel, by the exercise of the power conferred by statute, is the duty to keep the street fit for travel suspended for the time being? *Williams v. Tripp*, 11 R. I. 447.

. "The city has both the duty to perform and the power to exercise, and if it exercises the power it is bound to exercise it so as not unnecessarily to circumscribe or suspend the duty,"—

Says Mr. Chief Justice Durfee in the case above cited. The purpose of imposing the duty was to protect the public against the negligence of municipal and *quasi* municipal corporations, and other corporations to whom the Legislature had confided the care and control of highways and streets. In what manner then shall the city exercise the power so as not unnecessarily to suspend or circumscribe the duty? The answer is plain. By closing to public travel that portion of the street which is rendered unfit or unsafe by the exercise of the power. The city, through the corporate authorities, has full control over the streets. It has the right to exclude public travel from that portion of the street which is being graded and paved; and such exclusion is not only proper, but usual, not only for the protection of the public, but of the improvement which is being made. The statute only imposes the duty as to streets "*which are open to public travel.*" So long, therefore, as the city permits the street to remain open to public travel, so long the duty and consequent liability remain.

It follows from what has been said that it is not the exercise of the power to improve or repair streets alone which suspends the duty, but the exercise of the power to improve and repair, and the power to exclude public travel therefrom. The exercise of these conjointly suspends the duty. It may be necessary while repairs are being made upon a highway or bridge in the country to

exclude public travel from that portion until it is rendered safe and fit for public travel, and no one doubts the right and duty of officials to do so. The power to improve and repair, and the power to exclude, are to be exercised so far as may be commensurate with the necessities of the case. In one case the public may be excluded from a portion of the street, and in another the entire width. In the case at bar the street was being graded and paved the full width of the traveled way. To suspend the duty the public should have been excluded, by the erection of sufficient barriers, from the whole street to the point where the improvement had progressed. This the city neglected to do, but left the street open to the public travel in its unfit and unsafe state. The result was the injury to the plaintiff.

It is also said that there was no duty resting upon the city in this case, because the charter required the contract to be let to the lowest bidder; that the city was obliged to contract, and that the neglect charged was the contractor's neglect, and not that of the city. If this be so, then in no case can the city of Detroit be made liable where the expense exceeds $200, for the charter requires a contract in all such cases. The fact that the charter requires a contract furnishes no sufficient reason for a release from duty or liability, because the city has the power to exact indemnity from the contractor against liability from his negligence, and the power to reserve supervision, and the right to supply deficiencies in his undertakings, at his expense, it must, however, be a sufficient answer to this position that the duty imposed is a statutory duty, which the city itself is required to perform. In such cases the duty continues, although the person upon whom the duty is imposed enters into an engagement with an independent contractor through whose fault the injury occurs. *Detroit v. Corey,* 9 Mich. 165;

*Darmstaetler v. Moynahan,* 27 Id. 188; *Lake Superior Iron Co. v. Erickson,* 39 Id. 498; · *McWilliams v. Mills Co.,* 31 Id. 274; *Bay City, etc., Railroad Co. v. Austin,* 21 Id. 390; *Continental Improvement Co. v. Ives,* 30 Id. 448; *Palmer v. Lincoln,* 5 Neb. 136; *Williams v. Tripp,* 11 R. I. 447. The city cannot shift the burden upon the contractor, or rid itself of the duty; for, in whatever way the work is done, the city must still see that the streets which are open to public travel ·are in a condition reasonably safe and fit for travel. *Williams v. Tripp, supra.* The question of the liability of the city or a person who has entered into a contract with another to do a lawful thing in a lawful manner, reserving no control over men or materials, or the manner of performance, otherwise than to see that it is performed according to the contract, for the negligent acts or omissions of the contractor or his servants, has been a subject of much contention, and concerning which many learned jurists differ in opinion. It is needless in this case to rethresh the old straw, for the authorities are pretty much agreed that, where the statute imposes a duty and consequent liability for neglect,—

"It rests primarily, as respects the public, upon the corporation, and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others by any act of its own." 2 Dill. Mun. Corp. § 1027, and cases cited in notes. See, also, cases above cited.

This judgment should be reversed, and a new trial ordered.

SHERWOOD, C. J., and LONG, J., concurred with CHAMPLIN, J.

MORSE, J. The plaintiff in this case was riding down Fourth street, in the city of Detroit, after dark, on August 27, 1886. The street was being paved, and for that purpose it had been dug up for a distance of about two blocks. There were no lights or barriers to indicate

to the traveling public where this excavation began. By reason of such want of lights or barriers the plaintiff drove her buggy into the excavation, and it was overturned. By the accident she was injured, and sues the city for damages.

The paving was being done by the Talbot Paving Company, under a contract with the city. The contract provided, among other things, that the said paving company should—

"Erect and maintain a good and sufficient fence, railing, or barrier around any and all excavations necessary for said work in such a manner as to prevent accidents; to place upon such railing, fence, or barrier, at twilight on each day, suitable and sufficient colored lights, and keep them burning during the night; and, further, to pay to, indemnify, and save the city harmless against all loss and damage which may be occasioned or arise by reason of any negligence or carelessness on their part in doing such work; to do all work in a thorough and workmanlike manner, and conform in every particular to the plans, specifications, and directions of the board of public works; * * * to carry on the work at such points as the board of public works shall from time to time direct; * * * that they will not employ unfaithful or incompetent workmen or overseers, or disorderly persons, and that they will immediately discharge any person in their employ who is declared to be so, and whenever directed by said board."

The paving company were required to and did give bond to fulfill their contract, and save the city harmless from damage caused by their failure to perform said contract, or any of its requirements. The record fails to show when the excavation was made, or how long the street had been torn up. There was no showing as to the condition of this street at any other time than the night in question, and no evidence was introduced showing notice to the city, except the contract for the paving, and the fact that at the time of the accident the entire street had

been dug up for about two blocks. Under this state of facts the circuit judge directed verdict and judgment in favor of the defendant.

The counsel for plaintiff claim that the city, being required by statute to keep the streets in repair, and fit and safe for travel, and being liable in damages to any one injured by its neglect so to do, is thereby charged with the duty of repairing its streets, and that it cannot tear up the streets, through its agent, the contractor, without taking precaution to save the public from injury which would naturally follow from such tearing up of the street. The defendant's counsel maintain that the Talbot Paving Company was an independent contractor, and not an agent of the city in doing the work; citing *Detroit v. Paving Co.*, 38 Mich. 358.

The contract between the city and the paving company is set out in the record, and under it we are of the opinion that the company cannot be considered in any other light than that of an independent contractor, as claimed by defendant. The paving company received pay for the work and materials which they furnished. The clause in the contract which provides that they shall carry on the work at such points as the board of public works shall from time to time direct, or the fact that such board could diminish the quantity of the work during its progress at street crossings without vitiating the contract, does not change the relation of the parties in this respect. The board is given no control over the contractors or their workmen as to the manner of performing the contract. It is such control that furnishes the ground for holding the master or principal liable for the acts of the servant or agent. *Samuelson v. Mining Co.*, 49 Mich. 164 (13 N. W. Rep. 499); *Blake v. Ferris*, 5 N. Y. 48; *Kelly v. New York*, 11 Id. 432; *Slater v. Mersereau*, 64 Id. 138; *City of Erie v. Caulkins*, 85 Penn.

St. 247; *Clark's Adm'x v. Railroad Co.*, 36 Mo. 202; *Eaton v. Railway Co.*, 59 Me. 520. It cannot be successfully maintained that the paving company was either the servant or agent of the city. It is true that the contract provides that the company—

"Will not employ unfaithful or incompetent workmen or overseers, or disorderly persons, and that they will immediately discharge any person in their employ who is declared to be so, and whenever directed by said board."

But this clause does not alter the situation. It does not give the city such general control over the work as to make it answerable for the neglect of the paving company or its employés. The city does not become the master. It has no general power over the men employed by the contractor. The contract is that it shall dismiss from its employment unfaithful or incompetent workmen. Thus the fact of the superior and independent control of the paving company over the workmen is recognized, for, if the city retained this power, why contract with the contractors for the doing of what it could, at any time, do itself? See *City of Erie v. Caulkins*, 85 Penn. St. 247. It follows, therefore, that the city cannot be held liable for this injury to plaintiff upon the principles growing out of the relation of principal and agent or master and servant.

But it is claimed that, by the statutes of this State, it is made the duty of the city to keep its streets in repair, and in a reasonably safe and fit condition for travel, and that, independently of any liability growing out of the relations heretofore discussed, the statute is imperative that the portion of the street not under the control of the contractors should have been so separated from the place where the work was being done by barriers, lights, or other guards, that travelers upon the street would have been sufficiently warned against driving into the

excavation made by the contractors; that the street, or that portion of it upon which travel was permitted and invited, cannot be said to have been reasonably safe and fit for travel without such barriers, lights, or other guards; that it was the duty of the city to guard the point where the excavation of the contractors began, or to see that it was guarded, and, failing in this duty, it is liable for the damages done to plaintiff; that, being charged by positive law with this duty, it could not relieve itself by this contract, or any other, of such duty in the care and control of its streets, and avoid its liability to third persons for injury or death resulting from a breach of its duty in the care and control of its streets. We are cited to the following cases to sustain this view of the case: *Logansport v. Dick,* 70 Ind. 65; *Chicago v. Robbins,* 2 Black, 418; *Milwaukee v. Davis,* 6 Wis. 377; *Klatt v. Milwaukee,* 53 Id. 196 (10 N. W. Rep. 162); *Adams v. Oshkosh,* 71 Id. 49 (36 N. W. Rep. 614).

I am satisfied that this claim of the plaintiff's counsel is correct. Dillon on Municipal Corporations states the rule as follows:

" Whether the duty of maintaining the streets in a safe condition for public travel and use is specially imposed on the corporation, or is deduced, in the manner before stated, it rests primarily, as respects the public, upon the corporation, and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others by any act of its own.   *   *   *   Where a dangerous excavation is made, and negligently left open (without proper lights, guards, or covering), in a traveled street or sidewalk, by a contractor under the corporation for building a sewer or other improvement, the corporation is liable to a person injured thereby, although it may have had no immediate control over the workmen, and had even stipulated in the contract that proper precautions should be taken by the contractor for the protection of the public, and making him liable for accidents occasioned by

his neglect." 2 Dill. Mun. Corp. (3d ed.) §§ 1027, 1030. See, also, cases cited in note.

The work to be done under the contract in the case before us was necessarily *dangerous* to persons upon the street in the night-time, unless properly guarded and protected. This was recognized by the city in its contract, and it required the paving company to guard the excavation, and to indemnify and save the city harmless against all loss and damage occasioned by the neglect of the contractors or their employés. The city was not liable because of any relation of master and servant, or principal and agent, with the paving company, but the case comes clearly, in my opinion, within the rule as laid down by Dillon. Under the law of this State, the duty of keeping this street in a reasonably safe and fit condition for travel devolved upon the city, and by no act of its own, by contract or otherwise, could it escape that duty, or shift it upon some one else. To permit it to do so, and leave persons injured to seek redress from irresponsible parties, would defeat the plain intent and purpose of the Legislature in the framing of the statute. *King v. Cleveland,* 28 Fed. Rep. 835; *Grant v. Stillwater,* 35 Minn. 242 (28 N. W. Rep. 660); *Indianapolis v. Doherty,* 71 Ind. 5 (11 Cent. Law J. 515); *Grove v. Ft. Wayne,* 45 Id. 429; *Centerville v. Woods,* 57 Id. 192; *Logansport v. Dick,* 70 Id. 65; *Chicago v. Robbins,* 2 Black, 418; *Milwaukee v. Davis,* 6 Wis. 377; *Adams v. Oshkosh,* 71 Id. 49; *Fowler v. Strawberry Hill,* 74 Iowa, 644 (38 N. W. Rep. 521).

The question next arises, what notice must the city have of this want of barriers or lights or other guards to warn the people of the condition of the street? If the city had been doing this work by its own officers, there would be no necessity for proof of actual notice, or of a lapse of time to dispense with proof of actual notice. In

such case it would be sufficient to prove the tearing up of the street by the city, and the want of guards to pre_vent accident. But in this case the city had contracted with the paving company that the work should be securely guarded. It was only bound to ordinary care and prudence. I think at the beginning of the excavation the city would have a right to expect that the paving company would fulfill its agreement, and sufficiently protect the street. The city would have a right to suppose that the barriers provided by contract would be erected and maintained. *King v. Cleveland*, 28 Fed. Rep. 838. If, however, the city permitted the contractors to go on with their work without such barriers or guards for any great length of time, the law would imply a notice to the city that the contract was not being performed in this respect, and that the street was in a dangerous condition, and if such barriers were not maintained, or guards or lights kept, to warn people of such dangerous condition for such a period of time that the officers of the city, in the exercise of ordinary care and diligence, ought to have known it, the city would be liable for damages resulting from the negligence of the contractors.

The circuit judge, as appears by the record, took the case from the jury upon the ground that under the pleadings the plaintiff could not recover. The material allegations in the declaration were as follows:

"For that, whereas, the city of Detroit is, and for many years last past has been, a municipal corporation and body politic under and by virtue of the laws of the State of Michigan, and has become, and is thereby, charged with the duty of keeping the streets within its borders in a safe and suitable condition for travel by the public, and, in case of paving or repairing said streets, to take all proper precautions to warn the public thereof by barriers and lights; that, to wit, on August 27, A. D.

1886, the said city of Detroit was paving and repairing Fourth street near Lysander street, and the entire wrought or traveled part of the road-bed was torn up, and various holes were made in some parts of said wrought or traveled part of said street, and piles of sand, dirt, and other material were exposed and lying upon other and contiguous places in the said wrought or traveled part of the said Fourth street as aforesaid; that, while said defendant was paving and repairing said street as aforesaid, it left the same carelessly, recklessly, and negligently in the dangerous condition aforesaid, throughout the night, and placed no watchman, guard, barrier, or light at or near the same to warn persons lawfully passing with teams, vehicles, horse, etc., in and along said Fourth street; that during the evening of said day, to wit, at nine o'clock, and while it was dark, so as to conceal the condition of said road-bed, plaintiff was riding along said Fourth street in a buggy drawn by a horse, driven by the husband of the said plaintiff, and the said horse, without any negligence or want of care on the part of said plaintiff, or of her said husband, became, and was then and there, precipitated and hurled down into the holes and among the *debris* scattered here and there in the wrought and traveled part of said Fourth street, at and about Lysander street aforesaid."

Thereby it is further alleged the plaintiff was injured, etc. This declaration alleges sufficiently, we think, the duty of the city, and its negligence, to enable the plaintiff to recover upon the facts shown in the record if the city had proper notice of the failure of the contractors to properly guard the excavation.

The judgment must be reversed, and a new. trial granted, with costs.

CAMPBELL, J., (*dissenting*). Plaintiff, who is a married woman, sued the city of Detroit for injuries she received in being thrown from a buggy, which was upset by the uneven condition of a street which had been prepared for paving. The accident occurred in the evening, when daylight had disappeared, and it was claimed the plaintiff's husband, who was driving, drove into the excavated

surface of the road without seeing its condition. The
horse was trotting down Fourth street, and, when near
Lysander street, he went forward into the excavation,
which reached across the drive-way, so that the horse
fell, and the buggy was overturned, and plaintiff hurt.
About two blocks in length of Fourth street remained at
this time torn up in process of paving. The accident
happened August 27, 1886. The paving contract, which
is, under the city charter, required to be let to the low-
est bidder, was confirmed and became operative after July
9, 1886. The contractors, who were the Talbot Paving
Company, agreed to furnish and do all that was needful
to grade and pave Fourth street from Fulton street to
Forrest avenue, according to the specifications, with cedar-
blocks and cobble-stone. The entire work was to be paid
for, including labor, materials, and all other items, at
$1.17 per square yard. The contract required the con-
tractors to keep up proper barriers and lights; to inter-
rupt as little as practicable the public use of the street;
to begin it by August 2, and complete by October 11; to
employ none but competent and faithful men, and dis-
charge all others when required; to make no subcontracts,
and to do the work, and when done clear up the ground
properly, as required. The city on its part contracted to
pay for the work by special assessment, and it was agreed
no other liability should exist. Other clauses are not
material. There was no testimony showing when or how
long this section had been torn up at the place of the
accident, or that any city officer knew of its precise con-
dition at that time, or of the failure of the contractors to
guard and light it. The court below ordered judgment
for the defendant.

I think the ruling was correct. The only liability of
the city for injuries on highway is under the statute of
1879 (How. Stat. §§ 1442–1446), and some later statutes

not applicable to this case. By the city charter all paving work exceeding $200 is required to be let by contract to the lowest bidder, and only allowed to be paid for by special assessment. Chapter 11, §§ 8, 9, 33, Act No. 326, Local Acts of 1883. Payment out of any other fund is expressly forbidden in whole or in part. Repairs are allowed by a two-thirds vote of the council to be made directly under the control of the board of public works. Section 9. This board, in all matters of grading and paving, is required to have the work done by contract under specifications prepared by the board and approved by the common council. Section 8. It will be seen from the charter that the action of the city in having paving and grading done by contract is not from choice, but obligatory, and that such work is therefore not allowed to be done directly by the city, or its officers or agents, whether appointed or elected. No functionary of the city can conduct such a work. No person interested in a contract can exercise any office under the city. Chapter 4, § 11. The purpose of these strict provisions is to enable the city to be certain that no contractor can escape his contract by the action of city officers, and that the city shall not incur obligations of an unknown or variable amount for public works.

Previous to 1879, no city, unless made so by charter, was responsible to private persons for defective highways. The act of that year, which has been frequently passed upon, is entitled—

"An act for the collection of damages sustained by reason of defective public highways, streets, bridges, crosswalks, and culverts." Laws of 1879, p. 223.

It provides for damages caused "by reason of neglect to keep such public highways * * * in good repair, and in a condition reasonably safe and fit for travel," but it is subject to the proviso—

" That in all actions brought under this act it must be shown that such township, village, city, or corporation has had reasonable time and opportunity after such highways, street, cross-walk, or culvert became unsafe or unfit for travel, to put the same in the proper condition for use, and has not used reasonable diligence therein "

The law further proceeds, in order to avoid difficulty from lack of funds, and from the peculiar tenure of officers who are not corporate agents, to impose a duty to keep ways at all times "in good repair, so that they shall be safe and convenient at all times," "which are open to public travel." Where means are not otherwise provided, an amount not exceeding five mills on the dollar in any one year may be levied.

" Highway commissioners, street commissioners, and all other officers having special charge of highways, streets, * * * are hereby made and declared to be officers of the township, village, city, or corporation wherein they are elected or appointed, and shall be subject to the general direction of such township, village, city, or corporate authorities in the discharge of their several duties." Section 1445.

As the statute makes it the duty of the plaintiff in all cases to make an affirmative showing that the corporation neglected, after reasonable time after notice, to put the way in proper condition, the verdict in this case would have been proper had the city been empowered to intervene. There was no such showing whatever in this case. Furthermore, the statute creates no duty as to lights or barriers, which are only provided for in any case under the city ordinances. But the duty to furnish these is one of the contract provisions, and included within the sum to be paid for the whole job. The contract does not authorize the city to do at its own or at the contractors' expense any of the contract work, great or small, or to pay for any contract liability except out of the

special assessment. The charter was passed after the act of 1879, and, if there is any clashing, must govern.

But it seems clear that the law of 1879 never was meant to apply to any highways in progress of construction or of repair, which are not at the time "open to public travel." The duty of paving, and even of repairing, must, for the time being, make roads impassable, and suspend public travel on them. Repairing is, under the charter, left to be done by the city itself if it chooses to do so, and the city board of public works is no doubt a city agency, under the law of 1879, when it acts in putting highways in repair. But the act of 1879 does not declare that contractors shall be city officers or agents, or make cities responsible for their neglect or misdoing. If the city had power to contract or not as it sees fit, there might be room for claiming that it could not evade a duty by choosing to contract without necessity. But here the city has no choice. It is bound to contract in all cases, and to pay out of specific assessments, and not by general tax, and every city officer is debarred under prohibition from intermeddling. Neither can it be claimed that the city, under the charter, has no discretion as to allowing the street to be left so long as this contract leaves it in the hands of the contractor. The period allowed here is considerably less than that allowed by charter, which requires all work to be done between May 1 and November 1, and permits an extension beyond that, if the delay is not due to the contractor's fault.

I think it is clear that the case of a street under contract for paving, and disturbed for that purpose, is entirely outside of the law of 1879, both because that statute recognizes the liability as confined to roads at the time open for public travel, and as liable to all the incidents of repairs, and for the reason that it only covers roads

which are under the full control of city officers and agents, and not such as are by law required to be in the temporary custody of contractors. The city cannot have its liability enlarged because it has seen fit to provide special safeguards against danger. It was a wise and humane thing to do, but the city cannot be put in any worse position by it. The only liability is for what the statute covers, and not for failing to do what no statute has yet required. It is only by virtue of the statute of 1879 that such officers as do not get their powers by delegation from the corporation are put on the footing of corporation agents, so that the city becomes responsible for their neglects, and means were provided to enable repairs to be made up to a certain sum. The authorities in this State are uniform that a corporation is only liable for its own actual negligence, in the performance of its duty to the general public, and is only bound to reasonable diligence. *Medina Tp. v. Perkins*, 48 Mich. 67 (11 N. W. Rep. 810); *Fulton Iron & Engine Works v. Kimball Tp.*, 52 Id. 146 (17 N. W. Rep. 733); *Burford v. Grand Rapids*, 53 Id. 98 (18 N. W. Rep. 571); *McKellar v. Detroit*, 57 Id. 158 (23 N. W. Rep. 621); *McArthur v. Saginaw*, 58 Id. 357 (25 N. W. Rep. 313); *Agnew v. Corunna*, 55 Id. 428 (21 N. W. Rep. 873).

That an independent contractor is not an agent or representative of a corporation is elementary law, and has been settled repeatedly in this Court. In *Detroit v. Paving Co.*, 38 Mich. 358, that rule was laid down under just such a contract as that before us made by the city of Detroit for paving. The statute has not attempted to change this rule. I think the judgment should be affirmed.