111  589
d117  297

WELSH *v.* CITY OF LANSING.

MUNICIPAL CORPORATIONS — UNGUARDED EXCAVATION—PERSONAL INJURIES.

A city cannot be held liable for injuries to one who at night fell into an unguarded excavation adjacent to a sidewalk, if the evidence by which the negligence of the city is sought to be established is not inconsistent with positive evidence offered by it to the effect that upon the night in question the place was left by the workmen guarded with proper barriers, thereby permitting the inference that they were subsequently removed in some manner for which the city was not responsible.

Error to Ingham; Person, J. Submitted November 11, 1896. Decided February 18, 1897.

Case by William Welsh against the city of Lansing for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Clark C. Wood*, City Attorney, for appellant.

*Atkinson & Atkinson* (*Jason E. Nichols*, of counsel), for appellee.

HOOKER, J. The plaintiff was injured by falling into a cellar, and has recovered a judgment against the city for the injury sustained. The following is a description of the premises: At the corner of Ottawa and Grand streets, fronting north, is the Michigan Supply Company building. In front is a stone walk 12 feet wide. Next the building is a basement stairway, surrounded by an iron railing, which descends from the west. Immediately west of this building was the cellar in question. In front of this was a concrete walk, the south side of which was on a line with the stair rail mentioned. The plaintiff tes-

tified that he turned from Grand street, upon Ottawa, passed west upon the stone sidewalk in front of the building occupied by the Michigan Supply Company, and fell into the excavation. He testified that he saw no building material in the street, and no evidences of building there, before he went into the excavation, and that there was no barrier or guard around the excavation so far as he knew; that he met with none, but walked off the sidewalk without hindrance or notice; but that, after he got out, he noticed some barrels and a plank, the plank being up against the bank, and running down into the cellar towards the south. Mr. Eicher, an alderman of the city, testified that at the west side of the cellar, that being the place where dirt was drawn in, he noticed that it was in bad shape, and he told some of the workmen about July 1st that it ought to be boarded up, so that people could not get by it at all,—that "they should be made to go clear around;" and that, on the night of July 4th, some boys, who had taken some whips from some buggies with which to have some sport, saw him and his hired man, and started to run, and were followed by them. They ran north to Ottawa street, and then west. Witness had followed them from the Chapman House, on Michigan avenue, a block south of Ottawa, and reached the corner of Grand and Ottawa in time to see them run into the cellar when he was about 10 feet behind them. He testified that there was no guard where they went in; that there was a barricade on the north side of the excavation, consisting of planks and barrels, sitting east and west on the tar walk, which left a space to walk between the barrels and iron railing; that was where the boys ran. He said that the barrels and plank could be seen plainly. He testified further that, "of course, the barricade was all down daytimes;" that the barrels would protect any one coming from the north; and that he asked the men to nail up the west end. Mrs. Wright testified that she was employed near by the day before the accident, and from 15 to 20 minutes past 6 there were no guards, and the

men were all gone.    The bank had been dug out near the
walk.    She did not remember whether or not she noticed
any guard there from July 4th to July 10th.    She says
that there was a time when it caved out to the middle of
the walk, a very little in one place.    She said they put up
some boards to protect it, but could not tell just how.
She did not go by very late, and it was not, protected
when she went by until after the accident.    She said on
cross-examination that she quit work at 6 o'clock, and
went right home after washing and getting ready.    She
worked two doors from the cellar, and usually left at 15
or 20 minutes past 6.    She did not know whether or not
anybody was left there after she quit work, to put up
barricades for the night.    Upon the part of the defendant
it was shown that care was taken to surround the excava-
tion by planks laid upon barrels, one of which extended
from the barrel farthest east to the iron stair rail; that
this was the uniform custom; and that it was so placed on
the night of the accident, by men whose business it was
to remain and see that the lime was covered up, the barri-
cade put up, and everything straightened up.

An attempt has been made to state the substance of all
of the evidence given upon the trial.    There is positive
evidence of the erection of the barricade on the night in
question, corroborated by the statement of the plaintiff
that a plank extended towards the south from the bank
into the cellar, which is consistent with the theory that
it had been removed.    Counsel for plaintiff say that they
assume that this was a plank laid down to walk on, but
we find nothing in the testimony justifying the assump-
tion.    No claim is made that a barricade consisting of
plank laid upon barrels, completely fencing in a shallow
excavation made for temporary purposes, is not a reason-
able one, and, if there were, we should be inclined to say
that it is sufficient, as matter of law, in a case like this,
and that it should not be left to the jury to say that it was
not, under ordinary circumstances.    We are of the opin-
ion that there is an absence of proof to support the claim

of negligence upon the part of the city. The most natural inference from the testimony is,that the board was removed in some unexplained way, for which the city is not shown to be in any way responsible.

The judgment is reversed, and a new trial ordered.

LONG, C. J., GRANT and MOORE, JJ., concurred with HOOKER, J.

MONTGOMERY, J. I think there was evidence of negligence sufficient to justify the submission of the case to the jury.