[No. 9012.  Department One.  November 15, 1910.]

R. E. Hunter, *Respondent*, v. The City of Montesano,
*Appellant*.[1]

Municipal Corporations—Streets — Pedestrians — Contributory
Negligence.  A pedestrian crossing on a dark night a street which
he knows was closed to travel and which was properly barricaded,
giving no heed to numerous barriers which were a plain warning of
the dangers, is guilty of gross contributory negligence, and cannot
recover for injuries sustained in falling over a barrier.

Appeal from a judgment of the superior court for Chehalis
county, Sheeks, J., entered May 20, 1910, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for
personal injuries sustained by a pedestrian through an ob-
struction in a street.  Reversed.

*Bridges & Bruener* and *John P. Hartmann*, for appellant.

*W. H. Abel*, for respondent.

Gose, J.—The plaintiff seeks to recover damages for an in-
jury sustained in falling over an obstruction in one of the de-
fendant's streets.  From a verdict and judgment in his favor,
the defendant has appealed.

At the time of the accident, the appellant had been en-
gaged for two or three months in paving Main street, its
principal thoroughfare, between Broad street and Pioneer
street.  Main street runs north and south.  Broad street,
D street, and Pioneer street run east and west.  D street
lies between Broad street and Pioneer street.  The accident
occurred upon a dark, rainy, windy night.  The respondent
had been driving team for some time, for a liveryman whose
place of business was on the west side of Main street about
midway between Broad and D streets.  Just before the acci-
dent, he left the livery barn, traveled south on the sidewalk
to the intersection of Main and D streets; thence crossed

[1]Reported in 111 Pac. 571.

Main street on the north line of D street; thence north along the sidewalk to the post office, about midway between D street and Broad street; thence south upon the sidewalk to the south side of D street; thence diagonally across Main street toward a cigar store on the west side of Main street, intending to go from that place to his home, which was about two blocks southwesterly therefrom. At a point in Main street about thirty feet south of D street, he ran against a plank, one end of which rested upon a nail keg, the other upon brick or rubbish, fell to the ground, and received the injury of which he complains.

The respondent was fifty-eight years of age, the night was dark, it was raining, the wind was blowing, his eyesight was bad, the rain was beating against his glasses, and he was looking at the lights in the cigar store when he encountered the obstacle which caused his injury. He testified that the street was not in a condition to be traveled by teams; that it contained piles of brick, gravel, and other material; that teams were taken out of the rear of the barn; that the street was "all torn up there;" that he saw the barrier on the south side of D street as he passed it; that it extended across Main street from curbing. to curbing, and that he knew of a like barrier across Main street at the north side of Pioneer street. There was a large arc light about the center of D and Main streets, and another about the center of Pioneer and Main streets, which he says was not burning brightly, but was flickering, and the buildings upon Main street were lighted. A part of the sidewalk had been taken up, and he testified that the sidewalk area was rough and muddy. There was no barrier across the sidewalk area. People had been in the habit of crossing Main street. There is no evidence that the course he followed in going to the post office was dangerous.

It is apparent, not only that Main street outside of the sidewalk area was properly. barricaded, but that the respondent saw the barriers and knew the condition of the street. He

said that it was not safe for travel with teams.    If it was not
safe for teams in the daytime, it is obvious that it was danger-
ous for a footman° in the nighttime.    Moreover, it appears
that he was walking in reckless disregard of the unsafe condi-
tion of the streets.    He was looking at the lights in the
cigar store, as he said, to see where he was "coming out at,"
and giving no heed to the danger signals which were upon
every side.    Barriers are danger signals.    They serve no
other purpose.    Where a traveler is injured upon a street
which he knows is closed to travel or being improved, he can-
not raise the question of a sufficient barrier.    There can, it
seems to us, be but one conclusion upon the respondent's
evidence; that is, that he was guilty of the grossest negli-
gence.

The duty of a city to keep its streets in good repair nec-
essarily carries with it the right to close the street and sus-
pend travel while repairs and improvements are being made.
*Southwell v. Detroit*, 74 Mich. 438, 42 N. W. 118; *Jones v.
Collins*, 177 Mass. 444, 59 N. E. 64.

In *Compton v. Inhabitants of Town of Revere*, 179 Mass.
413, 60 N. E. 931, it was held that one who entered upon the
street, which he knew was being repaired and which he knew
contained frozen piles of earth, although there were no bar-
riers, was guilty of such negligence as precluded a recovery
for the injuries he sustained.    The court truly said that the
object of a barrier is to give warning of danger in using the
street, but that where the condition of the street itself is a
danger signal, the necessity of a barrier is removed.    It was
further said that the fact that certain persons had traveled
the street and taken the risk did not change the rule, and
that "there are always persons who take risks, if a short cut
can be made, and who will go over a street even if it is obvi-
ously not open to public travel."    In *Tagge v. Roslyn*, 51
Wash. 258, 98 Pac. 668, a suit to recover damages for per-
sonal injuries caused by falling into an excavation extending
across a sidewalk, a barrier had been erected by placing a

board across the sidewalk three or four feet above the walk, nailed to a building on the inner side of the walk and to a post at the outer side. Beneath the board a piece of two by twelve plank, about four feet in length, was laid against the house on one side, a similar plank was laid against the post at the other side, and a third plank was laid horizontally across the two. The barrier was put up by the employees of the city when they quit work on the evening of the accident. They were in place between the hours of nine and ten o'clock at night. The plaintiff fell into the excavation about two hours later. There was evidence that he did not see the barrier. It was ruled, as a question of law, that the barriers were sufficient to relieve the city from liability. The same principle is announced in *Welsh v. Lansing*, 111 Mich. 589, 70 N. W. 129.

In *Jones v. Collins, supra,* barriers across each end of the street that was being improved, and across each end of the streets leading into it, were held to suspend the right to travel upon the street, and to relieve the contractor from liability for damages resulting to a footman traveling the street. The barriers did not extend across the entire street. There was sufficient space at the side so that footmen could pass around. The court said:

"But the obstructions and signs were so placed and so numerous and of such a nature as to be well calculated to give ample notice to the public that the street was in process of construction and was not open for travel."

In *Lineburg v. St. Paul*, 71 Minn. 245, 73 N. W. 723, it was said that there is no duty upon the city to maintain a barrier so high and so close that children cannot find ways or means to pass through and over it. See, also, *Hamilton v. Detroit*, 105 Mich. 514, 63 N. W. 511, and *Walker v. Ann Arbor*, 111 Mich. 1, 69 N. W. 87. The principle which may be deduced from all the cases is that a city is not required to so barricade a street as to preclude injury. It

discharges the full measure of its duty where it gives a plain warning that there is danger in traveling a street.

The respondent contends that, because there were no barriers along the outer edge of the sidewalk connecting with the cross barriers, the question of negligence is one of fact for the jury. In support of his contention he cites and relies upon *Drake v. Seattle*, 30 Wash. 81, 70 Pac. 231, 94 Am. St. 844; *Peterson v. Seattle*, 40 Wash. 33, 82 Pac. 140; *Reed v. Spokane*, 21 Wash. 218, 57 Pac. 803; *Sutton v. Snohomish*, 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Archibald v. Lincoln County*, 50 Wash. 55, 96 Pac. 831; *Stock v. Tacoma*, 53 Wash. 226, 101 Pac. 830, and *Einseidler v. Whitman County*, 22 Wash. 388, 60 Pac. 1122. In the *Drake* case the excavation, into which the plaintiff fell and of which he had no knowledge, had no lights or barriers to mark its presence. In the *Peterson* case the city had left depressions and obstructions in the street which it was improving, without barriers or other warning of their presence. In the *Reed* case the ground under a cross walk which was extensively traveled by pedestrians had been excavated, the walk being cut so that it was suspended over the excavation. There were no lights or barriers at this point. The court said that the testimony was conflicting as to the amount of light afforded by the street lights at the point where the injury occurred, and that the question of whether the plaintiff was guilty of contributory negligence was, under the circumstances, one of fact for the jury. In the *Sutton* case the barriers had been removed. The city itself had not put up any safeguards, nor had it required others to do so. A third party had placed a loose plank across the sidewalk, one end of which rested upon a lime barrel, and the other was supported by a board fastened to a post near the outer edge of the walk. Upon these facts, the court said:

"If that was an adequate protection, under the then existing circumstances, the city is not liable for any injuries resulting from its removal by some unauthorized person and

occurring before it could, by the exercise of reasonable dili-
gence, discover its displacement. But whether this board,
which was without any permanent or substantial fastening
whatever and was liable to be thrown down at any moment
by the mere carelessness or thoughtlessness of persons passing
along the sidewalk, was, at any time, a sufficient protection
to the public, was a question for the jury to decide."

In the *Archibald* case the deceased lost his life by the
overturning of a wagon upon a fill in the public highway,
four or five feet in height and seven or eight feet in width
at the top. The court said:

"He had no choice of routes. He was compelled to pass
over the highway, leave his load behind, or remain away
over night. Under such circumstances, we think the negli-
gence of the deceased, or what a reasonably careful and prud-
ent person would have done under the circumstances, was
peculiarly a question for the jury."

In the *Stock* case it was held to be within the province of
the jury to determine whether one was guilty of negligence,
who fell from an unguarded elevated sidewalk traveled by
the public generally, upon a dark night, when she knew there
was no barrier. In the *Einseidler* case it was held that it
was not negligence *per se* to drive over a bridge that was
generally traveled and which had no side rails or barriers,
where there was no convenient method of going around it.
Cases cited by the respondent from other jurisdictions are
upon facts so variant from the facts in the case at bar that
a review of them would not be profitable.

We conclude, upon the respondent's evidence, that the city
had discharged its full duty, and that his injury resulted
from his own negligence. He could have returned to the
west side of Main street at the point where he had crossed it
in safety a few minutes before the accident. His home was
but a few blocks distant. He chose the shorter route, know-
ing both that it was barricaded and that it was dangerous.

The appellant's motion for a directed verdict should have

been granted.   The judgment is reversed, with directions to dismiss.

RUDKIN, C. J., PARKER, and MOUNT, JJ., concur.