[No. 12889. Department Two. January 11, 1916.]

ALBERT WELCH et al., Respondents, v. B. H. PETLEY et al.,
Appellants.[1]

MUNICIPAL CORPORATIONS—STREETS—IMPROVEMENTS—PERSONAL IN-
JURIES—CONTRIBUTORY NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.
The contributory negligence of a pedestrian in attempting to use a street which was in process of construction, on a dark night, is for the jury, where it appears that the contractor had but recently taken possession of the street, part of which he occupied, and had removed one of two wide planks constituting a narrow sidewalk elevated above the surface of the ground, without putting up any barrier, lights or warning, that the plaintiff was not aware that the plank had been removed and could not see on account of the darkness, that there were no barriers to indicate that the street had been closed to travel, and the testimony conflicted as to whether red lights were put up at the nearby street intersection at which plaintiff entered upon the street.

APPEAL—REVIEW—DISCRETION—NEW TRIAL. Where the court has exercised its discretion in refusing a new trial, sought on the alleged subsequent developments as to the condition of the plaintiff in a personal injury case, the same will not be disturbed on appeal except for clear and manifest abuse of discretion.

[1]Reported in 154 Pac. 145.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered December 5, 1914, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for personal injuries sustained in a fall from a sidewalk. Affirmed.

E. P. Whiting, James E. Bradford, and F. M. Egan, for appellants.

Green & Chester, for respondents.

Holcomb, J.—Eighteen errors are assigned by the appellants, but they are argued under three general propositions: (1) Whether or not appellants were guilty of negligence; (2) whether or not respondent Ruby Welch was guilty of contributory negligence; and (3) whether the court erred in giving and in refusing certain instructions.

On and prior to June 20, 1914, Thirty-seventh avenue south, in Seattle, was a public street, with a plank sidewalk along the easterly side thereof for some distance south of Hudson street, consisting of two rows of wide planks laid parallel, and which had been used by respondents and pedestrians generally for a long time. At a point about ninety feet south of the south line of Hudson street, the plank sidewalk was elevated about twenty inches from the ground. The city had let a contract to Petley for the grading of Thirty-seventh avenue south, and on June 17, 1914, the contractor had taken possession of the street under his contract and, at the intersection of the street with Hudson street just south of the south line thereof, he had placed a platform on skids, nine feet nine inches wide and thirty-five or forty feet long, on which was mounted a donkey engine and boilers. Just north of the south line of Hudson street at its intersection with Thirty-seventh avenue south, a car of coal was placed on a track, and a large pile of coal was unloaded therefrom on the ground, close to the platform and extending across the center of the street, leaving space suffi-

cient at each end of the pile for the sidewalk and for teams to pass between the sidewalks and the coal pile up and down Thirty-seventh avenue south. There were cables extended, but left lying flat on the ground at the time mentioned, from the donkey engine south for some distance. The contractor removed one of the planks from the narrow sidewalk on the easterly side of Thirty-seventh avenue south, at the point about ninety feet south from Hudson street, where it was about twenty inches from the ground, and left no barrier or light or other warning to guard that place, and at that place, after night or on the night in question, it was very dark.

At about 10:30 in the night of June 20, Mrs. Welch left the southwest corner of the intersection of Hudson street and Thirty-seventh avenue south, walking very rapidly, or almost running, diagonally across Thirty-seventh avenue south, to the easterly side of the street, reaching the line of the sidewalk on that side a little distance north of the place where the plank had been removed, walked to that place, and not knowing previously, and not being able to see at the time, that the plank had been removed, stepped down, fell, and sustained severe injuries. A part of the contractor's work was to remove the plank sidewalk and grade and improve the street its entire width. Mrs. Welch had been familiar with the street and the sidewalk in this locality about three years, but had not been along there that day, and was unaware of the removal of a part of the walk. There was an arc light at the southeast corner of the street intersection mentioned, extending on an arm from a wire pole. There were incandescent lights further south on Thirty-seventh avenue, but none very near the place where the accident occurred. There was a conflict in the testimony as to what red lights were put up at the street intersection. It seems well established that there was one red light on the coal pile and one on the donkey engine. Respondents, and other witnesses in their behalf, testified that there was no warning red light at the entrance to the walk going south from Hudson street on Thirty-seventh

avenue, no board nailed up, nor any sign, signal, or warning to indicate that the walk was not to be used by the public. There was no barrier or sign of any kind at the south end of the block to indicate that the street was closed to travel.

I.    Appellants rely upon the decision in *Hunter v. Montesano*, 60 Wash. 489, 111 Pac. 571, Ann. Cas. 1912 B. 955; *Jones v. Collins*, 177 Mass. 444, 59 N. E. 64, and *Compton v. Town of Revere*, 179 Mass. 413, 60 N. E. 931, to the points that obstructions so placed, and of such nature as to be calculated to give ample notice to the public that the street was in process of construction and not open for travel, thereby suspended the legal liability for not keeping the street in a safe condition for travel; and that a person so traveling such street assumes the hazard incident thereto.

These contentions are sound, but do the facts here come within them? In the *Hunter* case, the street had been in process of construction for two or three months, of which plaintiff was well aware, being employed in the daytime in a livery stable situate thereon; the accident occurred upon a dark, windy, rainy night; he knew that the street was all torn up at the place where he attempted to travel; he knew that there was a barrier extending from curbing to curbing at each end of the block on Main street, which was being paved; he saw the barriers and knew the condition of the street. Assuredly, as was said by the court, per Gose, J., "he was guilty of the grossest negligence." In the case it was further pointed out that "Main street outside the sidewalk area was properly barricaded." Plaintiff in that case was not traveling upon the sidewalk area but in the main portion of the street.

In *Jones v. Collins, supra*, it was stated by the court there were barriers across each end of the street that was being improved, and across the ends of each street leading into it, and had been up for many days previous to the accident, and "were so placed and so numerous and of such a nature as to be well calculated to give ample notice to the public that the

9—89 WASH.

street was in process of construction and was not open for travel."

In the *Compton* case, it was pointed out that:

"This is not the case of a person entering upon a street in the nighttime, which he has no reason to suppose defective, but of a person entering a street in the daytime, the grade of which he knows is being changed and which he also knows is not graded, or fit for public travel."

Again:

"It is obvious that the plaintiff knew all that there was to know about the condition of things; and, in attempting to use the street, did it at his peril."

These cases, therefore, all differ from the facts in the case now under consideration. From them, and many others in this and other states, as was said in the *Hunter* case, "The principle which may be deduced . . . is that a city is not required to so barricade a street as to preclude injury. It discharges the full measure of its duty when it gives a plain warning that there is danger in traveling a street."

But a street is often closed to travel as to its main body, or to teams and vehicles, and not as to its sidewalks or to pedestrians. The case of *Lautenschlager v. Seattle*, 77 Wash. 12, 137 Pac. 323 (also written by Judge Gose), is more controlling here. Plaintiff recovered against both the city and the contractor. On motion of the city, judgment *non obstante veredicto* was granted in its favor. It was said:

"We think the court erred in entering a judgment *non obstante* in favor of the city. Whether the appellant was guilty of contributory negligence is a question of mixed law and fact. There is abundant evidence in the record which justified the jury in finding that the public were traveling the two-plank way, where the appellant fell, with the knowledge and approval of the city. . . . Was the appellant exercising reasonable care in view of all the attending circumstances? The jury, upon competent testimony, resolved this question in her favor. Where the public use a street upon the invitation of the city, either express or clearly implied, the duty devolves upon the city to use reasonable care

to keep it in a reasonably safe condition for travel.  . . .
A traveler is not required to avoid a particular street be-
cause there is another and safer one that he may take.   He
has a right to travel upon any street which the city leaves
open for travel.  . . .   Where a city undertakes to im-
prove a street, it is required to use reasonable precautions
to guard the public from injury, and in doing so may, if
necessary, temporarily close the street to public travel.
. . .  It was incumbent upon the city to provide signals
or warnings if the walk was in common·use and dangerous,
and it knew, or in the exercise of reasonable care ought to
have known, its condition."

Judgment in favor of plaintiff on the verdict was ordered.
The case does not depart from the *Hunter* case, but is clearly
distinguishable therefrom and from the other cases cited and
relied upon.

In the present case, the evidence showed that other persons
were using the street, and that a man and his wife traversed
the same sidewalk area immediately after Mrs. Welch, and in
fact discovered her in the depression into which she fell.   It
was a proper case to go to the jury upon the questions of the
sufficiency of the barriers and other warnings to notify the
public of the suspension of travel upon the sidewalk area,
and also upon the question of the negligence of Mrs. Welch.

II.   It was upon the foregoing theory that the court in-
structed the jury, and of which appellants complain.   There
was no error, therefore, in the giving and refusing of instruc-
tions by the court.

III.   As to alleged subsequent developments as to the con-
dition of Mrs. Welch, shown on motion for new trial, the
court passed upon them as matters of fact, exercised his
judicial discretion, and denied the motion.   It has so fre-
quently been held in this state that in such case, unless there
is a clear and manifest abuse of discretion by the trial court,
this court cannot and will not interfere, that no citation of
cases is necessary.

Judgment affirmed.

Morris, C. J., Main, Parker, and Bausman, JJ., concur.