(No. 24245.—

THE NATIONAL BANK OF THE REPUBLIC, Appellant, *vs.* THE KASPAR AMERICAN STATE BANK, Appellee.

*Opinion filed February 16, 1938—Rehearing denied June 22, 1938.*

FARTHING, C. J., dissenting.

LORD, LLOYD & BISSELL, (DAVID J. KADYK, and GORDON R. CLOSE, of counsel,) for appellant.

ROBERTSON, CROWE & SPENCE, (EUGENE P. KEALY, and HENRY L. MCINTYRE, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

An action of assumpsit was brought against the Kaspar American State Bank in October, 1932, by the National Bank of the Republic to recover $3398.02, on account of one hundred forty-two checks drawn upon it and its assignor, the Standard Trust and Savings Bank. The checks in question had been drawn between September 6, 1927, and May 1, 1928, by an employee of the Burton-Dixie Corporation, payable to the order of eighteen of its employees, ostensibly for pay-roll purposes. Each check bore the purported endorsement of the respective payees which, it is claimed, was forged by one of the drawer's employees. All of the checks were subsequently endorsed by one Mike Zupan and deposited by him with defendant who again endorsed them and collected payment from plaintiff or its assignor. A typical check is as follows:

"Special Account Check
Burton Dixie Corporation
2024 South Racine Avenue                                     63763
                                        Chicago, Jan. 10, 1928

Pay to the Order of              Tony Alozoitis          $24.75

     Exactly Twenty Four Dollars Seventy Five Cents
Not good for more than One Hundred Dollars—or after sixty
days from date.

The National Bank of the Republic
(2-13) Chicago, Ill.          ·        Burton Dixie Corporation
                                       by A. H. Hafferkamp."

"Endorsements:

Tony Aloziotis
Mike Zupan
Kaspar American State Bank

Paid through Chicago Clearing House on January 16, 1928,
Continental National Bank and Trust Company."

At the trial, defendant (appellee here) made no effort to refute the evidence of the forgeries offered by plaintiff nor did it deny that it had received payment from plaintiff or its assignor. A jury in the circuit court of Cook county returned a verdict for plaintiff and judgment was rendered thereon for $3660. On appeal, the Appellate Court for the First District reversed the judgment because "the delay for a period of four years in notifying the defendant bank of the forgeries defeats plaintiff's right to recover," and judgment was rendered there against plaintiff for costs. We granted leave to appeal.

Section 66 of the Negotiable Instruments act (Ill. Rev. Stat. 1937, chap. 98, par. 86) provides that every endorser, not an accommodating party, who endorses without qualification, warrants to all subsequent holders in due course that the instrument is genuine and that he has good title to it. These express warranties, however, extend only to subsequent holders in due course and, by definition, (Ill Rev. Stat. 1937, chap. 98, pars. 72, 213,) the drawee is excluded from this class. (8 Corpus Juris, p. 393.) We

are not concerned with the liability of an endorser who guarantees all prior endorsements, since the Kaspar American State Bank made no such endorsements. Section 23 of the act (Ill. Rev. Stat. 1937, chap. 98, par. 43) provides that where a signature on an instrument is forged, it is wholly inoperative and "no right * * * to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." Thus, defendant was not entitled to collect the money from plaintiff drawee in the first instance, and we have held that where payment has been made without knowledge of the forged endorsement of the payee, the drawee may recover the amount so paid. (*Cosmopolitan State Bank* v. *Lake Shore Trust and Savings Bank*, 343 Ill. 347.) Defendant does not dispute this general rule but contends that plaintiff in this case is estopped from recovering because it failed to notify defendant within a reasonable time after learning of the forgery. The issue of notice within reasonable time thus becomes the principal question before us.

The only Illinois case where this same question has been considered and passed upon by this court is favorable to the defendant's position, and, in our judgment, decides the issue. In *First Nat. Bank* v. *Northwestern Nat. Bank*, 152 Ill. 296, this court said: "And where a drawee or a bank pays a bill of exchange or a bank check to an endorser who derives title through a prior forged endorsement, he may recover back the money so paid, on discovery of the forgery, *provided he makes demand for repayment within a reasonable time after the discovery of such forgery.*—(2 Daniel on Neg. Inst. secs. 1364, 1372; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Williams* v. *Tishomingo Savings Institution*, 57 Miss. 633.") This rule has been approved by various text writers, and to our knowledge has never been disputed. (Morse, Banks and Banking, (6th ed.)

p. 1074; Joyce, Defenses to Commercial Paper, (2d ed.) p. 264.) In the latter work, the author states: "And one who has made a payment on a forged bill or note may forfeit any right which he possesses to recover such payment *by a failure to give notice until after an unreasonable period of time has elapsed* after his discovery of the forgery." While it is true that a drawee, like a drawer or payee, may not be under a duty to *discover* a forged endorsement (*Hamlin's Wizard Oil Co.* v. *United States Express Co.* 265 Ill. 156; *United States Cold Storage Co.* v. *Central Manufacturing Bank,* 343 id. 503;) we believe it is well settled, as previously stated by this court, (*First Nat. Bank* v. *Northwestern Nat. Bank, supra,*) that a drawee, to recover money paid to a cashing bank on a check with a forged endorsement, must notify the cashing bank within a reasonable time after discovering the forgery.

A. H. Hafferkamp, an officer in the Burton-Dixie Corporation, testified that they found out about the forgeries in "June or July or August, 1928." That company hired an investigator in October, 1928, to discover further facts surrounding the issuance of the checks but the exact time when plaintiff bank learned of the forgeries does not appear in the record. It is not denied that, as found by the Appellate Court, it was at least four years prior to the bringing of this suit. The burden was upon plaintiff to show when it learned of the forgeries and when it notified defendant. In the absence of such a showing in the record, we must conclude, as claimed by defendant, that the beginning of this suit in 1932 was the first notice received by defendant. Had plaintiff notified defendant earlier, the latter might have taken steps to hold Zupan, the prior endorser, or the forger himself. Thus defendant was necessarily damaged by plaintiff's negligence and delay in notifying it within a reasonable time after discovering the forgeries. What is reasonable diligence in giving notice is usually a question of fact to be determined in each par-

ticular case. Under all authorities seen by us such a period as four years' delay in giving notice after discovery would preclude recovery on forged paper. See 3 Randolph on Commercial Paper, sec. 1740.

Plaintiff has cited *Crahe* v. *Mercantile Trust and Savings Bank,* 295 Ill. 375, and *Independent Oil Men's Ass'n* v. *Ft. Dearborn Nat. Bank,* 311 id. 278, but these two cases are not controlling here. In the former, we held that the negligence of a payee in allowing a check to be put into circulation with a forged endorsement was no defense to a drawee who had paid the check. In the latter, we held that a payee was under no duty to notify the cashing bank of a forged endorsement. The issue of reasonable notice, as in the present case, was not involved in either of those decisions and they also can have no application here because no direct relationship existed there between the parties to the suits.

Plaintiff further contends that even if it was under a duty to notify defendant of the forged endorsements, defendant waived such defense because it did not set it up in its affidavit of defense. An essential part of plaintiff's cause of action was proof that it had notified defendant of the forgery and such notice was alleged in four counts of plaintiff's declaration. Plaintiff's affidavit of claim filed with its declaration pursuant to section 55 of the Practice act of 1907 (Cahill's Stat. 1931, chap. 110, sec. 55) significantly failed to make any similar allegation and the affidavit of defense filed with defendant's plea of the general issue merely met the allegations in the affidavit of claim. While defendant waived all other defenses not stated in its affidavit, this did not relieve plaintiff of the necessity of proving the essential averments of its declaration. (*Harrison* v. *Rosehill Cemetery Co.* 291 Ill. 416.) Thus plaintiff's objection is not well taken.

In its notice of appeal to the Appellate Court defendant failed to include a prayer for relief as required by rule 33

of this court. Because of this, plaintiff now argues that the Appellate Court had no jurisdiction to hear the case and that subsequent proceedings are a nullity. While the filing of a notice of appeal is made jurisdictional by section 76 (2) of the Civil Practice act, (Ill. Rev. Stat. 1937, chap. 110, sec. 76, par. 200,) the failure to include a prayer for relief therein is merely an error of form and not of substance. Where, as here, an appellee is not prejudiced, the Appellate Court is not deprived of jurisdiction by technical errors of this sort.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE FARTHING, dissenting:

I respectfully contend that the defendant is in no position to assert that it received no notice of the forgeries until this suit was filed. It did not set up in its affidavit of merits that lack of notice would be a defense, and the abstract of record, on page 73, reveals why this defense was not asserted in the trial court. Frank Mayer, house attorney and assistant trust officer for the Kaspar American State Bank, had a conversation about the checks involved in this case in the latter part of 1928, and this is reasonably close to May 1, 1928, the date of the last check on which an endorsement was forged. The proof indicates that defendant was promptly notified and never thought of asserting this defense until it reached the Appellate Court. The majority opinion reaches the conclusion that proof of notice was a part of plaintiff's case, since the giving of notice was alleged in some of the counts of its declaration, and so it did not matter whether lack of notice was set up in defendant's affidavit of merits. In *United States* v. *National Bank of Republic,* 141 Fed. 208, it is held that a declaration which fails to allege the giving of such notice is not demurrable. In this case the common counts, numbered 1 and 2 in the amended declaration, and counts 7, 8 and 9, did not allege

notice. Counts 3, 4, 5 and 6 alleged the giving of notice. The first named counts would support the verdict and judgment, since the surplus allegations of the other counts need not be proved. *Clay Fire and Marine Ins. Co.* v. *Wusterhausen,* 75 Ill. 285.

But even if the question of notice were properly presented, I believe the majority opinion is wrong. The case of *First Nat. Bank* v. *Northwestern Nat. Bank,* 152 Ill. 296, stated by the majority to be the only Illinois decision which has considered the question of the effect of failure of the drawee to give prompt notice to a cashing bank is not in point. The language quoted is *obiter,* because there was no question of negligence in the case. *Independent Oil Men's Ass'n* v. *Ft. Dearborn Nat. Bank,* 311 Ill. 278, is not distinguishable on principle. We there held that the payee of a check is under no duty to notify the cashing bank of an endorsement forged by the payee's secretary. If the object of requiring notice to the cashing bank is to enable it to apprehend the forger and to hold prior endorsers, it does not matter who gives the notice, the payee or the drawee. If the payee is under no duty to give notice, but the drawee is, all that the drawee need do is to persuade the payee to bring the suit, and the rule announced by the majority opinion would be circumvented. The opinion in *Independent Oil Men's Ass'n* v. *Ft. Dearborn Nat. Bank, supra,* conforms with commercial practices, and places the loss on the one most responsible for it. The cashing bank is nearer to the forgery than the drawee, and can protect itself by taking only responsible endorsers. The opinion in that case recognizes that the drawee has been deprived of its money by tortious conduct, and trover would lie to recover the money so obtained, but the tort may be waived and a contract action may be brought. In *Wizard Oil Co.* v. *United States Express Co.* 265 Ill. 156, 164, we held that the negligence of the payee in discovering the forgery of its endorsements was no bar to recovery against the express company for

money paid by it on the endorsements. On page 164, we said: "There is a rule which obtains between banks and depositors quite similar to that which is applied wherever accounts are rendered, and that rule is that depositors must exercise reasonable care in examining returned statements and canceled checks and give prompt notice of irregularities discovered by such care. That rule is adopted so that the bank may not only be able to proceed promptly against guilty parties, but may be put on its guard and protect itself from similar fraud in the future. It cannot be applied in this case where accounts were never returned to the plaintiff by the defendant, and neither a statement of account nor vouchers were ever returned. That the plaintiff was grossly negligent in the management of its affairs can scarcely be doubted, but under the law as declared by all the authorities that fact was not a defense."

The majority opinion distinguishes the *Wizard Oil Co. case* by saying that there is no duty to discover the forgery, but that once it is discovered prompt notice must be given. If the reason for requiring prompt notice is to enable the cashing bank to apprehend the forger, it would seem that diligence should be required at all times. While *Crahe* v. *Mercantile Trust and Savings Bank*, 295 Ill. 375, is not strictly in point, as stated by the majority opinion, it is nevertheless harmonious with *Independent Oil Men's Ass'n* v. *Ft. Dearborn Nat. Bank, supra.* It does not permit a drawee to interpose the payee's negligence in allowing a check to be put into circulation with a forged endorsement on it as a defense in a suit by the payee to recover money paid on the forged endorsements. Both of these latter cases adhere to the principle that one acting on an endorsement must ascertain its genuineness at his peril. The payee, whose endorsement has been forged, may sue the cashing bank, the drawee, or any intervening party through whose hands the check has passed. Negligence is no defense to such a suit. It should follow, logically, that if the payee

has been paid and the drawer has been reimbursed, the drawee may recover its losses from those through whose hands the check passed until it was presented to it for payment while bearing a forged endorsement. Thus, in theory, no one would lose money, except in the case of an insolvent forger, and then the loss would be placed on the one nearest to him, who could have avoided paying on the forged endorsement by the exercise of prudence. Negligence should be a defense only when the drawer sues the drawee. I find further support for my views in Brannon's Neg. Inst. Law, (Beutel's ed. 1932,) pp. 288, 289.