THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant, *v.* ALFRED A. GALLEY *et al.*, Defendants-Appellees.

(No. 71-316;

Fifth District—June 29, 1973.

*Rehearing denied August 6, 1973.*

G. MORAN, J., dissenting.

William J. Scott, Attorney General, of Springfield, (William P. Ryan, Assistant Attorney General, and Ronald C. Mottaz, Special Assistant Attorney General, of counsel,) for appellant.

Wiseman, Shaikewitz & McGivern, of Alton, for appellees.

Mr. JUSTICE CREBS delivered the opinion of the court:

This is an appeal by the Illinois Department of Transportation from a judgment rendered upon a jury verdict in the Circuit Court of Madison County in an eminent domain proceeding. The judgment awarded defendants-appellees $4,000.00 for land taken, $100.00 for a temporary construction easement, and $50,000.00 for damages to land not taken. It is contended that reversible error was committed in the admission of certain testimony, in the refusal of the court to give one of petitioner's instructions, and the alleged prejudicial final argument of counsel for defendants.

At the request of defendants a prehearing conference was held in this court under Supreme Court Rule 310, (Ill. Rev. Stat., ch. 110A, sec. 310.) At this hearing the facts were stipulated substantially as follows.

Defendants owned and operated a building materials and lumber supply business, consisting of an aggregation of buildings utilized as a single unit with a frontage of 450 feet abutting Route 140 in Madison County. The depth of the property was 270 feet. It was proposed that Route 140 be widened from two lanes to four lanes, necessitating the taking of six feet of defendants' property along its entire length for right of way purposes. The taking reduced the parking area in front of defendants' buildings from a previous width of 35 feet to 29 feet. The petition did not seek elimination of access as such, but construction plans provided for the installation of a curb and gutter along the new right of way line and four entrance driveways, 35 feet in width. In effect, this eliminated the former use of the State right of way for parking, and altered the formerly broad entrance to defendants' property by restricting it to the four 35 foot driveways.

For convenience purposes at the trial the property was described with tract numbers, and these numbers were used in the jury verdict, the post trial motions, the judgment, and again here on appeal. The verdict and judgments were $4,000.00 for land taken, Tract 415A; $100 for the temporary easement, Tract 415B; and $50,000.00 for damages to land not taken, Tract 415.

At the prehearing conference it was agreed and stipulated between the parties that the issues on appeal would be limited solely to that part of the judgment relating to the award of $50,000.00 for land not taken, and that defendants could withdraw or receive payment in the amount of $4,000.00 for land taken and $100.00 for the temporary construction easement. It was further specifically stated that the notice of appeal filed by petitioners would be considered as amended to reflect this agreement.

At the conclusion of the prehearing conference on April 13, 1972, a proposed order was drawn stating that the stipulations and agreements of the parties were adopted and approved by the court and made a part of the record on appeal; that abstracts of the record need be prepared only insofar as germane to the issue agreed upon; that a statement of facts and issues on appeal should be omitted from the briefs; and that times for filing briefs and abstracts should be computed from the date of the prehearing order.

On April 17, 1972 defendants filed a motion to strike said order and to dismiss petitioner's appeal. It was contended that petitioner's original notice of appeal was fatally defective in that it specified an appeal only from the judgments entered with respect to Tracts Nos. 415A and 415B, and that it failed to mention Tract No. 415. It was argued further

that at the prehearing conference petitioner had abandoned its appeal relative to Tracts 415A and 415B, and, because Tract 415 was not included in the notice of appeal, the appellate court was without jurisdiction to entertain the appeal. It was also argued that the attempted amendment of the notice at the prehearing conference limiting the issue to Tract 415 was ineffective in that it was not made within 90 days after judgment. We denied this motion on April 26, 1972, stating that defendants cannot avail themselves of changes in position created by prehearing conference procedures taken for clarification and simplification of issues on appeal, and that, in our opinion, the notice of appeal was sufficiently addressed to the form of judgment entered in the trial court so as to place squarely in issue the amount of damages to land not taken, *i.e.* Tract No. 415.

In their briefs defendants have now reiterated their argument relative to the alleged deficiency of petitioner's notice of appeal and we shall first address ourselves to this matter.

■■ Stated broadly, the purpose of a notice of appeal is to inform the party in whose favor a judgment or decree has been rendered that the unsuccessful party desires a review of the case by a higher tribunal. Admittedly, the notice is jurisdictional, but it has been generally held that where the deficiency in the notice is one of form only, and not of substance, the appellate court is not necessarily deprived of jurisdiction. (*Bank of Republic v. Kaspar State Bank,* 369 Ill. 34.) Also the notice should be considered as a whole and where the notice fairly and adequately sets out the judgment complained of and the relief sought so that the successful party is advised of the nature of the proceedings, then the absence of strict technical compliance with the form of notice is not fatal. (*People v. N.Y.C.R.R. Co.,* 391 Ill. 377.) More specifically, a notice which clearly states that an appeal is from a judgment issued on a certain date, is sufficient as an appeal from the entire judgment and not just a portion thereof even though the notice did not quote the entire judgment order. *Woods v. Village of LaGrange,* 298 Ill.App. 595.

Here, it is clear that the notice of appeal specifically refers to the trial court judgment of August 5, 1971, in which defendant was awarded $4,000.00 for land taken, $100.00 for a temporary construction easement, and $50,000.00 for damages to land not taken. Also the notice prays that said "Order be reversed and the judgment entered in the above named cause be set aside". This is conceded by defendants. However, it is contended that further language in the notice limits the appeal solely to those portions of the judgment involving Tracts 415A and 415B because only those tracts are specifically mentioned; and that the omis-

sion of any specific mention of Tract 415 constitutes a failure to perfect an appeal as to that tract involving the $50,000.00 damage to land not taken. We cannot accept this argument.

■■■ The order itself mis-described the tract numbers, but there was no doubt in the minds of defendants or anyone else that the order entered judgment in accordance with the findings of the jury as to each respective tract. In fact, not until almost one year after the trial, only after the pre-hearing conference, did defendants file a motion to dismiss the appeal based on the same grounds advanced here. We denied the motion for the reasons above stated. We have been given no reason now to change our position. Based on the rules above cited the deficiency, if any, in the notice is one of form only, and not of substance. Considered as a whole it fairly and adequately sets out the judgment complained of and the relief sought. The defendants were fully apprised of the nature of the appeal, and they were fully aware that a review was sought of the entire judgment relating to defendant's property and not just the two lesser portions thereof. Nor have defendants been prejudiced in any way. To the contrary, it is they who seek an unfair advantage on purely technical grounds. We find the notice of appeal was sufficient in itself, and no amendment thereof was contemplated or made at the pre-hearing conference as suggested by defendants. At such hearing the petitioner's abandonment of the appeal as to the two lesser portions of the judgment constituted the only "amendment" of the notice; and the appeal of that portion of the judgment referring to damages to land not taken remained intact.

We shall now proceed to a consideration of the case on its merits.

For petitioner, William Blacklock testified that the fair cash market value of the entire property was $250,000.00, that the taking would affect the remainder and cause damages in the amount of $180.00 to relocate a concrete base sand box. He stated there would be no effect on the truck loading and unloading and that customer parking would be affected only to the extent that parking would have to be angular and not perpendicular. Robert Warford testified that fair cash market value in his opinion was $150,000; that there was no damage to land not taken, and that the four 35 foot entrances would not adversely affect parking, or ingress and egress for trucks.

Alvah Breitweiser, a licensed architect was the first witness for defendants. He stated that he was requested by defendants to give his opinion as to reproduction costs to "facilitate" customer parking and to enable trucks to reach the rear of defendants' property. He stated he was not an appraiser, that he had no opinion as to the value of the property, either before or after the taking, and that he had no idea whether the

proposed costs would bring the property back to its present condition or whether it would increase the value. Over objection, he was permitted to testify that to facilitate customer parking 13½ feet of the front of the building for its entire length should be removed at a cost of $7,500.00 and rebuilt at a cost of $33,000.00; that the grocery store on the west end should be removed at a cost of $2,000.00, a house removed for $1,500.00, and a garage removed for $500.00. He also suggested a canopy on the building for $990.00 and asphalt paving for the newly created parking area at a cost of $1.50 to $2.00 per square foot. Exclusive of the paving and a raising of the warehouse trusses to permit trucks to reach the rear of the premises, these figures total $45,490.00.

Defendant, Allen Kutter, testified that the fair cash market value for the whole property was $350,000.00 and that damage to land not taken should be $125,000. He based this latter figure on his opinion that the only way he could get customer parking would be to demolish the front of his building, and the only way that he could get merchandise delivered would be to remove a house and garage, and part of a grocery store, and by raising certain warehouse trusses to permit trucks to enter the rear of his premises. Such demolition and replacement costs were included in his opinion of damage to land not taken. Appraiser William Thebus testified that the fair cash market value of the entire property was $294,204.30, and that the damage to land not taken was $153,597.80. He stated that he based this latter figure on the "awful" trouble trucks would have getting into the 35 foot driveways to deliver merchandise, and the loss of customer parking. In his opinion customer parking would be reduced from approximately 40 cars to 13 cars, but he admitted that prior to the taking, 27 or 30 of the 40 cars would have been resting on the state's right of way. John S. Payne testified that the fair cash market value of the property was $350,000.00 and that damage to the remainder was $115,000.00 based on the need to demolish part of the main building, a house and garage, and the need to raise certain warehouse trusses to arrange for parking and truck deliveries.

Petitioner contends first that the trial court committed reversible error in admitting the testimony of the architect, Breitweiser. It is argued that damages for land not taken can only be determined by the difference in the fair cash market value of the land before and after the improvement, and that actual costs of individual items are not admissible. Defendants claim that Breitweiser's testimony was offered, and admitted, not for the purpose of making an appraisal but to lay a foundation to see if such reproduction costs would affect the market value in the opinion of the appraisers.

■■ It has been uniformly held in Illinois that the measure of recov-

ery for damages to land not taken is the reduction of its value resulting from the improvement, and that expenditures made and costs incurred in adopting the land to use after the improvement are relevant, if reasonable and economical, as evidence of the depreciation in value, but not as recoverable items in themselves. (*Dept. of Public Works v. Bloomer,* 28 Ill.2d 267; *Dept. of Public Works v. Caldwell,* 301 Ill. 242.) Stated another way we consider the rule to be that in determining diminution of the market value of land not taken it is proper to consider the expenses made necessary by reason of the improvement in adjusting the property to the changed conditions brought about by the taking. However, such costs are not the measure of damages and cannot be recovered specifically. They are merely factors of evaluation to be considered in determining a reduction in the market value of the whole. Counsel for defendant showed a clear understanding of this rule when he cautioned his appraiser, John Payne, "Not to give the figures" but just to tell how he arrived at his opinion and what he had considered. In effect, what counsel is proposing is that the rule can be circumvented by having a witness, other than an appraiser, testify to such individual costs without relating said costs to a diminution in fair cash market value. The evil resulting is readily apparent. The demolition of a large part of the building, together with the house and the garage undoubtedly would provide a large parking area, but without such demolition there is little or no evidence that the available parking space would be any less than it was before the taking. Also, the parking area prior to the taking was not blacktopped. Nor is there any evidence that the taking of the six foot strip necessitated the raising of the main trusses in the warehouse, for the rear of the premises had not been used for deliveries prior to the taking. Apparently, the state's right of way had been used for both parking and deliveries, and defendants' main complaint is that the state would now be making full use of its right of way.

■■ Appraiser Payne and owner Kutter testified that they took into consideration the architect's estimate of costs, but neither of them, nor did the appraiser, Thebus, ever testify what the market value of the land would be after the taking without the major renovations suggested by the architect. In effect, they did not use the renovation costs as factors of evaluation of reduced value, but rather as a measure of damages to be recovered specifically. As a result the jury was denied the opportunity to compare the difference, if any, between the fair cash market value of the property as a whole before and after the taking which is the only proper measure of damages. Though we cannot know to what extent the jury was thereby influenced, it is interesting to note that their verdict

was very close to the architect's itemized costs estimate of his suggested renovations. Such renovations may be considered desirable by the owner and his architect but they do not in themselves necessarily reflect a diminution in market value caused by the taking. Accordingly, we conclude that the trial court committed reversible error in admitting the testimony of Breitweiser, and the cause is remanded for a new trial on the issue of damages to land not taken.

■■ In view of our remandment we shall discuss only one other contention of petitioner. It is apparent that the parties are in complete disagreement on the question as to whether "access rights" is a relevant issue under the facts of this case. Petitioner contends that access rights may be acquired only when the condemnation suit is brought under the Freeway Act, (Ill. Rev. Stat., ch. 121, sec. 8—101, *et seq.*) It is argued that the case was not brought under this Act, the petition did not seek access rights, and, therefore, any reference thereto was improper. Instructions to this effect were given to the jury, but petitioner objects to the admission of certain evidence on behalf of defendants relative to loss of access rights, and also to argument of counsel on the subject. It appears to us that the dispute is one of semantics. The Freeway Act contemplates a complete denial of any access. The position of defendant is that their access, or more aptly their rights of ingress and egress, to the highway is impaired because the driveways provided are inadequate to permit the entry and departure of trailer trucks delivering merchandise. It is argued that though the state has the authority to regulate the means of ingress and egress, nonetheless such authority is limited to that which is reasonable. (Ill. Rev. Stat., ch. 121, sec. 4—210.) And, if damages are occasioned by the unreasonable impairment of one's ingress and egress to his property they are compensable. *Dept. of Public Works v. Morse,* 3 Ill.App.3d 721. See also, *Pure Oil Co. v. City of Northlake,* 10 Ill.2d 241.

It thus appears that the question does not involve a denial of access rights but rather whether defendant's rights of reasonable ingress and egress to the highway have been impaired. If more precise terminology is used by both parties in the next trial it would be possible to state the issue on this question without the present confusion.

The judgment of the Circuit Court of Madison County on damages to land not taken is reversed and the cause remanded for a new trial on that issue.

Reversed and remanded.

EBERSPACHER, J., concurs.

Mr. JUSTICE GEORGE J. MORAN dissenting:

The majority opinion properly acknowledges that expenditures made and costs incurred in adopting the land to use after the improvement are relevant as evidence of the depreciation and not as recoverable items in themselves. However, the majority reverses because this evidence was not related to the diminution of the fair cash market value. This objection was not made in the trial court and this contention has not been made in this court. The only objection made is that the estimated costs were not admissible in evidence. There are other reasons for reversal stated in the majority opinion which were not made in the trial court or in this court.