CLIFTON-STRODE, No. 2, INC., *et al.*, Plaintiffs-Appellees, *v.* KAROLYN K. KENT *et al.*, Defendants-Appellants.—(Commercial National Realty Co., Counterplaintiff and Third-Party Plaintiff-Appellants; Karolyn K. Kent *et al.*, Counterdefendants-Appellees; Robert W. Strode, Third-Party Defendant.)

Third District   No. 81—233

Opinion filed November 24, 1982.

HEIPLE, J., concurring in part and dissenting in part.

Charles W. Kohr, of Mathis, Sloan, Littler & Kohr, of Peoria, for appel-

lants.

Robert L. Burhans, of Peoria, for appellees.

JUSTICE BARRY delivered the opinion of the court:

This appeal arises out of a dispute over a realtor's commission on the sale of an apartment building located in East Peoria, Illinois. On August 22, 1979, Samuel and Karolyn Kent entered into a listing contract giving Commercial National Realty Company (CNR) an exclusive right to sell and advertise the Kents' apartment building. A CNR sign was placed at the front of the property. The listing contract was a standard multiple-listing agreement which provided that it would terminate on December 20, 1979, and contained the following clause:

"If you [CNR] sell or exchange this property, or if this property be sold or exchanged during the terms of this listing and sales contract; or within a reasonable time thereafter to a buyer whom you have introduced this property, I/we agree to pay in cash to you a broker's sales commission based on 5% of the actual sales price, payable at time of closing of Contract to Purchase Real Estate or ninety (90) days after seller's acceptance, whichever occurs first."

On October 30, 1979, a sales representative for Clifton-Strode realty firm made arrangements with CNR for a one-time showing of the Kent property to Daniel Schmidgall. This was the only showing during the time CNR's listing contract was in effect.

On December 28, 1979, eight days after CNR's listing expired, Clifton-Strode signed a listing contract with Karolyn Kent authorizing a one-time showing of the same property to the same Daniel Schmidgall. The Clifton-Strode contract utilized the same form as the CNR contract, and contained the same extension clause. Also on December 28, Daniel Schmidgall and his wife contracted to exchange certain farm property with five family members (Edgar, Lorenza, Phillip, Mark and Theodore Schmidgall), and on January 7, 1980, these five Schmidgalls submitted an offer to purchase the Kent property for $230,000 to Clifton-Strode as agent for Kent. The offer was subject "to a complete inspection and approval of the property by Dan Schmidgall prior to closing." Clifton-Strode received $5,000 earnest money from the buyers which was placed in an escrow account. The offer was accepted by Karolyn Kent, and the transaction was closed on February 15, 1980. On that same date, the farm exchange between the Schmidgalls took place, and title to the Kent property was vested in Daniel and Patricia Schmidgall.

Subsequently a dispute arose between the realtors concerning the broker's commission, and Clifton-Strode filed suit against Karolyn Kent and CNR. In count I Clifton-Strode asserted a right to the entire commission of $11,500 under the December listing agreement, and after stating that the $5,000 in escrow would be applied to the commission, asked for judgment for the balance of $6,500. In count II Clifton-Strode alleged CNR's tortious interference with the listing contract and requested damages of $6,500.

In addition to an answer denying liability, CNR filed a counterclaim, count I of which sought to recover the $11,500 broker's commission from Kent under the August listing agreement, and count II of which asserted Clifton-Strode's tortious interference with the August contract. In count I, CNR stated that $4,600 of the commission was owed by CNR to Clifton-Strode as the "cooperative broker."

The cause was submitted to the trial court on motions for summary judgment by both CNR and Clifton-Strode. Karolyn Kent in the meantime had admitted liability for the broker's commission totalling $11,500 and paid $6,500 to the clerk of the court. The other $5,000 was being held by Clifton-Strode.

The trial court entered judgment for $11,500 in favor of CNR against Karolyn Kent on count I of the counterclaim, and ordered that the commission be divided in accordance with multiple-listing rules so that Clifton-Strode would receive $4,600 as a subagent of CNR, and as a cooperating broker. The court also ruled that Karolyn Kent shall be liable for only one real estate commission arising from the sale of the property. The court also decided that there would be no recovery under count II of the counterclaim or counts I or II of the complaint. From these rulings and judgment, Clifton-Strode filed this appeal, and CNR has cross-appealed. Clifton-Strode deposited the $5,000 from its escrow account with the circuit clerk and has stipulated that it will look only to funds held by the clerk to satisfy any judgment it might obtain against Karolyn Kent.

■ Clifton-Strode contends that the court erred in awarding part of the broker's commission to CNR under the August listing contract where CNR failed to find a customer ready, willing, and able to purchase the Kent property before the listing contract expired on December 20, 1979. Clifton-Strode supports this contention by citing those cases which have held that the right of a broker to receive a commission expires at the expiration of his contract. (*E.g., Groome v. Freyn Engineering Co.* (1940), 374 Ill. 113, 28 N.E.2d 274.) However, none of the cases cited by Clifton-Strode contained an extension clause like the one in the listing contract, which explicitly authorizes payment of

a commission to CNR if a buyer, who viewed the property during the term of the contract, purchased the property within a reasonable time after the termination of the contract. Parenthetically, we note that no one disputes that the January 7, 1980, offer to purchase was within a "reasonable time" of the December 20, 1979, termination of CNR's listing agreement.

The extension clause in the listing agreement was not ambiguous and must be given effect, as was done in *Kokinis v. Kotrich* (1979), 74 Ill. App. 3d 224, 392 N.E.2d 697, a case involving a similar provision in a listing agreement. We affirm the judgment entered in favor of CNR on count I of the complaint.

■■ Clifton-Strode has also argued on appeal that CNR should have been found liable for tortious interference, but because we have concluded that the trial court was correct in awarding CNR a portion of the realtor's commission under the agreement, we find there is no basis for the tortious interference allegations of Clifton-Strode's count II. CNR argues that we lack jurisdiction to decide the merits of this issue because Clifton-Strode failed to specify "Count II" in the notice of appeal. We do not take such a restrictive view of our appellate jurisdiction. The notice of appeal states that Clifton-Strode appeals from the judgment entered in favor of CNR on CNR's "Motion for Summary Judgment on Count I of the Counter-claim for a real estate commission and for Judgment in favor [CNR] and against [Clifton-Strode] on [Clifton-Strode's] Complaint for real estate commission ***." The prayer for relief requests reversal of the judgment as to only count I of the counterclaim and count I of the complaint, omitting any reference to count II. But the courts have held that where the notice of appeal clearly identifies the judgment appealed from, it is sufficient to stand as an appeal from the entire judgment even though only a portion of property involved in the judgment was specifically mentioned. (*Department of Transportation v. Galley* (1973), 12 Ill. App. 3d 1072, 299 N.E.2d 810.) It has even been held that the failure to include any prayer for relief at all is merely an error of form, not substance, and hence not such a deficiency as to be fatal to the appeal. (*In re Estate of Kaluza* (1978), 62 Ill. App. 3d 267, 379 N.E.2d 78.) CNR has not been prejudiced in any discernible way and should not be allowed an advantage on purely technical grounds. We conclude that we have jurisdiction to review the entire judgment order entered by the circuit court.

■■ We also affirm the denial of CNR's counterclaim for tortious interference with CNR's contractual relationship with Kent. Malice is required in order to support a cause of action for tortious interference

with a contract, and malice has been defined as an intent to do wrongful harm and injury without just cause. (*Candalaus Chicago, Inc. v. Evans Mill Supply Co.* (1977), 51 Ill. App. 3d 38, 366 N.E.2d 319.) The trial court's ruling reflects the absence of any direct evidence of malice or intentional wrongdoing on the part of Clifton-Strode. CNR insists that malice can be inferred from the circumstances of this case, while Clifton-Strode argues that the ultimate buyers had had no contact with CNR and that the sale was a totally separate transaction from the CNR listing. Even if CNR's is a permissible inference here we cannot say that the trial court's refusal to find such an inference was contrary to the manifest weight of the evidence. In other words, we believe there was a *bona fide* dispute, not an intentional wrong.

CNR also contends that this appeal should be dismissed because Clifton-Strode has no standing to appeal from the judgment in favor of CNR against Kent. The ruling in favor of CNR involved a rejection of Clifton-Strode's claim to the entire commission. We think Clifton-Strode has standing. CNR also argues that the controversy is moot because Clifton-Strode has since accepted $4,600 from the circuit clerk pursuant to the judgment order. We do not agree. As long as Clifton-Strode is claiming a right to the additional $6,900 commission, the controversy is not moot.

For the reasons stated, we believe the judgment of the trial court should be affirmed.

Affirmed.

SCOTT, P.J., concurs.

JUSTICE HEIPLE, concurring in part and dissenting in part:

I dissent from that portion of the majority opinion which affirms the trial court's denial of CNR's counterclaim for tortious interference with CNR's contractual relationship with Karolyn Kent. I concur in all other respects. As to the counterclaim, the majority states that malice is required to support the cause of action and that the trial court's ruling reflects the absence of this needed element. CNR's counterclaim was disposed of on cross motions by both parties for summary judgment.

Malice is indeed a requisite for liability. However, it is established that what is meant is not malice in the sense of ill will but rather an intentional interference without justification. (Restatement (Second) of Torts, Introductory Notes to ch. 37, secs. 766, 767 (1977); 45 Am. Jur.

2d *Interference* sec. 3 (1969).) The necessary legal malice is obvious in the instant case. Clifton-Strode was aware of CNR's contract and its provisions. It was the standard multiple listing agreement which gave CNR the exclusive right to sell and advertise the Kent apartment building. As a cooperating or subagent for CNR, Clifton-Strode showed the Kent property to the ultimate buyer, Daniel Schmidgall. There is no dispute that this initial showing was during the time the CNR contract with Kent was in effect. Eight days after CNR's listing contract expired, Clifton-Strode signed a contract with Karolyn Kent to show the same property to the same Daniel Schmidgall. Ten days later Schmidgall decided to buy the Kent property.

As the majority notes, Clifton-Strode never disputed that the Schmidgall offer to buy was within a "reasonable time" of the termination of CNR's contract and that the clear, unambiguous terms of the contract authorize payment of a commission to CNR if a buyer who had viewed the property during the contract term, purchased within a reasonable time after the contract term.

From Clifton-Strode's actions it is clear that it was attempting to secure the commission away from CNR. It is equally clear that this action was without justification: Schmidgall initially viewed the property during CNR's contract. CNR was entitled to the commission if Schmidgall decided to purchase, as he did, within a reasonable time thereafter, even if the CNR contract had terminated. For Clifton-Strode to approach Kent and engage her to enter into an exclusive listing contract for a one-time showing of the property to Schmidgall was wrongful. It was an attempt to interfere with CNR's rights under their contract with Kent. This is malice: an intentional interference without justification.

I agree that this issue was ripe for summary judgment in view of the filing of cross motions for summary judgment by both parties. Regrettably, however, summary judgment as to CNR's counterclaim was granted to Clifton-Strode, the wrong party. Summary judgment as to that counterclaim should have been entered in favor of CNR and damages determined. I would reverse and remand for that limited purpose.